Good morning, your honors. Williams' claim before this court is controlled by the decision of Polk v. Sandoval, which found that the Kaslan jury instruction in Nevada on first-degree murder reduced the burden of proof and violated the defendant's federal due process. Last year, the Nevada Supreme Court revisited Byford v. State, and in that decision, said, Despite our disagreement with the assumption underlying the decision in Polk, we acknowledge that the change effected by Byford properly applied to that case as a matter of due process. The United States Supreme Court has indicated for purposes of due process, the relevant consideration is not just whether the law has changed, but also when the law has changed. Thus, if the law changed to narrow the scope of a criminal statute before a defendant's conviction became final, then due process requires that the change be applied to the defendant. In such cases, retroactivity is not an issue. Rather, due process requires the conviction to be set aside if required by a change in the law. The change effected in Byford applies to convictions that were not yet final at the time of the change. Williams is just such a case. And in this NECA decision, the Nevada Supreme Court acknowledges that failing to apply Byford to Williams on his direct appeal violated his federal due process rights. The state, in their responsive brief, seems to agree with Williams' argument that Byford should afford Williams relief. The state says, Williams is correct in his argument, and the Nevada Supreme Court held in the NECA that a few defendants, those whose convictions were not final at the time of the announcement of Byford, may be eligible for relief because of the change in state law. Counsel, this is Judge Rawlinson. Yes, ma'am. In Ahabia's case, we're looking at whether or not the state court decision was contrary to or an unreasonable application of clearly established Supreme Court law, right? Yes, ma'am. That is correct. Okay. So what is the Nevada state decision that we're reviewing in this case? In this case, we're reviewing the direct appeal denial of Williams' claim on appeal that the Kaslan jury instruction violated his due process rights. How? What was the asserted due process violation? That it reduced the burden of proof for the state and eliminated the jury's consideration of the three essential elements of first-degree murder. And what is the United States Supreme Court decision that governs us in terms of determining whether or not the jury instruction impermissibly relieved the state of its burden? What Supreme Court authority are we looking to? Well, according to the Polk decision, the Ninth Circuit has relied on the Supreme Court's decision in Winship and in Sandstrom. Okay. And those are the decisions that we're relying on. Okay. So now under those decisions, though, then can't we determine whether or not any instructional error was harmless? Absolutely, Your Honor. That is, in fact, the standard of review. Okay. So we agree so far. So in this case, would you tell us why the instructional error was not harmless? I'd be happy to do that. In this case, Mr. Christopher Williams, who was 17 at the time of the crime, was made to stand trial with Robert Byford, a man who was some three years older than him. And throughout the trial, the prosecution transmuted evidence that was brought against Byford into evidence that appeared to be against both defendants. The prosecution frequently referred to they when the witness had testified that Byford had done some act or made some statement. The evidence brought against Mr. Williams was primarily through the testimony of Todd Smith, who was the third person who was present at the time of Monica Wilkins' killing. And Mr. Smith had obtained a huge benefit from the State in providing testimony against these other two defendants. But didn't the jury weigh the relative credibility of all of those witnesses in rendering its decision? The Nevada Supreme Court? No, the jury. You're talking about evidence that was presented and, you know, people who had motive to fabricate testimony. But wasn't that all considered by the jury? Well, I know that that's the presumption, Your Honor, that the jury follows the instructions that it's given. And in this case, the argument is that the instructions that were given were constitutionally infirm. They were allowed to convict Mr. Williams on the basis of evidence that they considered to be premeditation. But when they were told by the prosecutor that they could infer premeditation on the basis of the use of a firearm in the killing, and when they were told by the prosecution that premeditation could be completed at the instant of the killing, they were misled in their instructions as to how to weigh the evidence. Was there an objection to what the prosecutor said premeditation meant at the time that he said it? I believe there was some objection, but, Your Honor. It was not specific. At the end of the argument, there was an objection about improper argument, but it was not specific as to what was said. I believe that's true, but I'm not certain. Let me ask you something that I'm having trouble with. Maybe you can help me out on this. You agree that the jury was properly instructed as to the elements of premeditation, correct? Well, as to the elements of premeditation? Yes. No, Your Honor. I do not agree that that's the case. I thought that the error, the Kaslan error, was in not instructing on deliberation and willfulness. But they were instructed as to premeditation. They were instructed as to it, but the instruction was faulty in that it allowed for premeditation to be found at the instant of the killing. It compressed the need for premeditation to such a narrow window of time that there was no way that the jury could have rationally and reasonably known what premeditation was supposed to be. Well, didn't the instruction just say that you don't need to have a lengthy period of premeditation? But it didn't say it was instantaneous, did it? Yes, it did, Your Honor. Where is that in the record? Well, I'm sorry. I know that the prosecutor argued that that's what it was. Right, but the instruction didn't say that, though. What did the instruction say? Let's see. You are, let's see. I'm sorry. Instruction said, instruction number 11, murder in the first degree is willful, deliberate, and premeditated killing of another human being. Instruction 12 said premeditation is a design, a determination to kill distinctly formed in the mind at the moment before or at the time of the killing. So premeditation need not be for a day, an hour, or even a minute. It may be instantaneous as successive thoughts in the mind. So, Your Honors, they were, in fact, instructed that premeditation could have happened at the instant of the killing. Hasn't that instruction been approved, though? Well, it was disapproved in Byford. Only because it was, the Castlin instruction was disapproved only because it lumped together premeditation, deliberation, and willfulness. But the wording of that instruction has not been disapproved in terms of the definition of premeditation. Well, I believe that the new instructions devised by the court in Byford do disapprove this language and provide for a much broader, a much clearer instruction on what premeditation is. Counsel, your time is almost up, and I just wanted to ask you a question about a Supreme Court case that you did not mention when you had that And that's the Nader case, N-E-D-E-R. Are you familiar with that? Supreme Court case 1999. I am not familiar with that, Your Honor. You are not. All right. Thank you. I am not. Can I reserve a few seconds? Okay. 16 seconds. Thank you, Counsel. We will hear from Mr. Schultz. Good morning. May it please the Court. My name is Vic Schultz. I am a senior deputy attorney general. I represent the warden and the respondents. If I could, with the permission of the Court, I would like to back up and deal with the larger issue here because I have got a concern that we have a gross conflict now between circuit law and state law. And for those of us who deal with habeas, we are going to have a problem as long as that conflict is outstanding. It is my view that when Mr. Williams' jury was instructed, the jury was not wrongfully instructed. I understand the argument based on Polk, but we now know from NICA that Polk was based on a misunderstanding of state law. Now, the question then becomes, the question becomes why was there, what was the basis of Polk and why is Polk faulty? The Polk panel in deciding that Byford had clarified the Kaslan instruction, in my view, was based on some language in the Nevada Supreme Court's Garner opinion where they used the word, and it was unfortunate, there's no doubt, they used the word clarified. And they said, we clarified the line of cases. And we know from the U.S. Supreme Court decisions in Binkley and Fiore that there, that's a term of art when you say we're clarifying law because the implication is we're clarifying law back in time retroactively as opposed to declaring new law. I think had the Polk, and I say this with all due respect, I think if the Polk panel had engaged in a little deeper analysis, they would have been able to recognize that Byford was a break in the law. Byford was not a clarification. Byford specifically said we are rejecting our past law and we're moving forward now in a situation where deliberation can no longer be defined in terms of deliberation. They need to be separated so we can separate with greater clarity second-degree murder from first-degree murder. Well, but even the Nevada Supreme Court said that the decision would be applied to all cases that were pending. So that doesn't, to me, imply a break. It implies that it's a clarification because if it's a break, it would only be applied prospectively to cases that came up later. Judge Rawlinson, you're absolutely correct. There's a window period that was recognized in NECA. And the question is whether or not a criminal defendant's case was final as the U.S. Supreme Court determines that case, which means time for applying for a certiorari in the U.S. Supreme Court is concluded. So you get that additional time frame after direct appeal. The Nevada Supreme Court said in NECA that during that window period, if somebody's case, somebody's conviction was not finalized, they can come back to the state court and apply for this kind of relief. Mr. Williams may fall into that category. If so, he has a remedy under state law. The Nevada Supreme Court said that for cases in that frame, in that window, that gray area, that in fact the new rule, the benefit of the new rule applies. But as for cases where you're not in, where a defendant's not in that window, BIFRD's an absolute break. Now, we know BIFRD's an absolute break because the Supreme Court, the state Supreme Court, did an excellent analysis in that NECA case, and they said, they discussed Polk, they discussed the Kazan instruction, the history of murder instructions and the mens rea elements, and they went into a lot of detail. They went into a lot of effort, and they said that BIFRD was a break with the past. It does not apply retroactively to cases that were finalized. And I think that's what you're talking about, Judge Rawlinson, whether cases were finalized. But the difficulty we have right now, and we're going to be back here again and again and again on this issue, until a panel of this court in a published opinion recognizes the fact that the state law underpinnings of Polk were incorrect, as we know now from NECA, there was a change in the law. I'm not arguing that this panel can overturn Polk. I understand one panel of this court cannot overturn another panel. That's the function of en banc review. I'm not asking you to overturn. I'm asking you simply to recognize the fact that the assumptions of the Polk panel changed after Polk, and that's recognized with complete clarity in NECA. But we don't even have to get there, because our task under EPA is to look at Supreme Court law. So you're asking us to delve into a thicket that we don't even have to enter, because we're looking at Supreme Court law on this issue. I agree with your analysis of the standard under 2254D, and we do look to Supreme Court law. The Supreme Court law that the U.S. District Court judge below found that was violated was Sandstrom and In re Winship. If Polk was correct law, then the District Court judge was correct, because he had to apply Polk. And if, in fact, if the analysis engaged in, and, again, I mean this respectfully, if the analysis engaged in between Kaslan and Byford is rather superficial, then you can simply say, well, look, the Nevada Supreme Court said in Byford there were problems with the Kaslan instruction. You can then go the next step and apply In re Winship and say, well, nobody's defining the term, the element of deliberation, but under Kaslan at that time there was nothing wrong. We go into the brief on all the different definitions of murder from all the different jurisdictions. There's nothing wrong. This circuit defines premeditation and deliberation, as we pointed out, identically. If something is premeditated, this circuit pattern instructions assume that it was deliberate, because the Federal statute under Section 1111 is almost identical to Nevada's statute. I think you're making this way more complicated than it has to be, actually, under the rubric of AEPA, because we look at the decision of the Nevada Supreme Court and see whether or not that decision is contrary to or an unreasonable application of governing Supreme Court authority. Trying to resolve the State decision and the Ninth Circuit decision isn't part of that analysis that we have to do. I just don't see why we have to do that. I understand you're wanting to deal with a narrow issue, but the difficulty That is the issue. Under AEPA, that is what our charge is. Understood. But what the judge below found was that there was a violation of Federal law under In re Winship. And there was a specific finding that what the Nevada Supreme Court did violated that, violated 2254-D. Right. That doesn't — I agree that that's the issue. But the issue is whether under Supreme Court authority, the Nevada decision was contrary to — whether it was contrary to Winship, Nieder, and all of the progeny or not. So that's what we're looking at. And I know it would simplify for you if we would resolve the issue that you foresee coming, but I don't see that as being part of the issue that's before us now. I have not argued that the district court, the U.S. district court judge below was incorrect in finding a violation under In re Winship. And if so, then he was correct in finding the violation and engaging in the harmless error analysis, which is appropriate with an instructional error. The problem here is it's my view that the district court judge was wrong after the fact because Polk — the In re Winship error under 2254-D for habeas review is an incorrect ruling of law because Polk is an incorrect ruling of law. If Polk is incorrect — and I understand your hesitance in wanting to go there, and I apologize that if it appears I'm trying to make this a bigger issue. But if Polk leads automatically to an In re Winship finding, a violation because the State's forgiven an element of the crime. But Polk itself is bad law. It's incorrect because it was based on an erroneous — a group of a bunch of erroneous assumptions of State law that we know from NECA. Legally speaking, the rug was pulled out from under — from under Polk. And we're — what we have now is we have a ruling in this case by the U.S. District Court judge in Las Vegas who applied Polk to find an In re Winship violation. So there's the 2254 application. And the — in my view, the cleanest way to deal with this issue is to simply look now at the conflict that exists between Polk from this court and the NECA-Biford cases where we know that the Nevada Supreme Court was not clarifying law. They were breaking with past law. The law was evolving. And when you look at the U.S. Supreme Court cases of Binkley and Fiore, State law is what the State Supreme Court says it is. And they broke with that law. And according to the U.S. Supreme Court in Fiore and Binkley, that's okay. And the State — the federal courts have to follow that. But the difficulty here is if Polk is no longer good law, and we know that from NECA because NECA clarified Biford, then the difficulty we have is the U.S. District Court, after the fact, was wrong when he applied Polk to get to Winship. Did the — were — were — but the district court still looked at harmless error. He did. But he applied Polk, and he found an In re Winship violation. And my view is the problem in this case is in order for you to engage in a harmless error analysis, you have to apply Polk, and you have to address — No, you don't. No, you don't. You have to address the issue of In re Winship. You don't have to apply Polk. You don't have to apply Polk. You can apply Supreme Court authority to say that — In re Winship. Yes. Right. Yes. But you don't have to apply Polk to get there. You can apply In re Winship and the Nevada Supreme Court's decision that the Castling instruction relieved the prosecution of its total burden. You never have to get to Polk to do that. But you — I don't — I'm at a loss to see. You may be right, Judge, but I'm at a loss to see how in this case, in this particular case, you get to the In re Winship violation bypassing Polk. First of all, that's what the district court judge did. And that's the — But we don't have to have — we don't have to use the same analysis. We're just seeing whether or not on de novo review the district court judge committed error. So we don't have to approve of the analysis the district court judge undertook as long as we agree that the result is correct.  Okay. Then let me — let me make this suggestion, then. In order to get to In re Winship, you have to make a finding that the — We don't make findings. You have to rule that the — the State in this case was forgiven the burden of proving an element, in this case, deliberation. We know from NECA that that's not true. Can we apply a harmless error standard in that? You can, but the problem is in order to apply harmless error, you have to find the violation first. That's sort of a — that's a condition proceeding. And you want us to go to State? You want us to go to Polk and the State — the conflict to do that? And I'm saying we don't have to go there. But it — but I think to some extent it's unavoidable. And I would — I would suggest it's unavoidable because if you find an In re Winship violation, which would be the 2254D problem, you have to find that the instruction of the jury in this case was incorrect. And it was — and you — that finding must be made according to State law. There is — you can't avoid the State law issue because the State courts decide what State law is. And Kaslan simply was never bad law. It was changed at Byford, and we know that at NECA. But Kaslan, in my view, was never bad law. I understand. I understand your argument. But my — my point is in a — in addition to the — to benefiting this case, this issue is going to come back again and again and again until — And when it comes back, when it's fairly raised, a panel can deal with it. When it — when that issue is fairly joined, a panel can definitely deal with it. But I don't see the need to reach out and address an issue that's not fairly raised. That's my — that's my position. And I understand that. And I think you're — I think you're right, Judge, except I would suggest to you that it is fairly raised in this case because of the In re Winship angle. And so I think it's appropriate for the Court to deal with it. Thank you, counsel. We let you go way over time. Ms. Story, you have not only the 16 seconds, but you're going to get the 3 minutes that your opponent was allowed to go over time. So you have — reset the clock to 3 minutes and 16 seconds. Go ahead. Thank you, Your Honor. I don't think I'll actually need that much time. I would disagree with the State's argument that Polk is no longer good law. I know that the Nevada Supreme Court has characterized Byford as new law. But I think if you look closely at their analysis in NECA, you will see that historically, as far back as in 1981 at least, the Nevada Supreme Court in Hearn v. State at 97 Nevada 529 recognized that the three elements were clear and distinct, and all three had to be proven beyond a reasonable doubt. Now, the Court says that deliberation — the definition of deliberation was not discussed in that case, but I think that this Hearn decision does emphasize that the Court at that time recognized the need to have each of these three elements considered and instructed to the jury. I also agree with you, Judge Rawlinson, that it's not necessary to go through Polk to find the harmless error analysis. And I believe that Mr. Williams is entitled to relief and entitled to a new trial based on the noble review of the entire record before you, because he was convicted based on the weight of the evidence against his co-defendant, Mr. Robert Byford, and the arguments of the prosecutor caused the jury to imply and infer that evidence against Byford against Mr. Williams. But what is the Supreme Court case that is in conflict which would support your view? Well, Your Honor, In re Winship and Sandstrom found that if the jury is allowed to — if the State is not required to prove each of the elements of the crime the defendant is charged with, then a due process violation has been imposed upon the defendant, and the conviction is not righteous. I just want to be sure I understand your argument, because you're saying we could put Polk aside and in response to Judge Rawlinson's inquiry earlier, if we apply the typical AEDPA standard, there has to be a conflict with Supreme Court law. And so your bottom line position is there is a conflict with Winship in this case? Yes, Your Honor. All right. Very well. I understand. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Bea